### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

MELISSA HOPE SWANSON,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:15-cv-08894-NLH

**OPINION**

_____

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106
    On behalf of Plaintiff

CATHERINE ELISABETH HAMILTON
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security

Act.  42 U.S.C. § 401, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of disability, originally March 1, 2005, but amended during the administrative process to June 10, 2008.  For the reasons stated below, this Court will reverse and remand the matter for further proceedings consistent with this Opinion.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 11, 2012, Plaintiff, Melissa Hope Swanson, applied for benefits alleging disability since March 1, 2005, later amended to June 10, 2008.  Plaintiff's impairments include cervical degenerative disc disease, lumbar degenerative disc disease, right rotator cuff tendinopathy, and hypothyroidism. Plaintiff previously worked as an accounts receivable clerk.

On September 28, 2012, her claim was denied at the initial level of administrative review.  On January 29, 2013, it was denied upon reconsideration.  On June 5, 2014, the ALJ held a hearing at Plaintiff's request.  Plaintiff was represented by counsel, and a vocational expert testified.

On June 26, 2014, the ALJ issued a decision finding Plaintiff not disabled.  On November 30, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  Having exhausted her administrative remedies, Plaintiff brings this

civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.
1984).  "[A] court must 'take into account whatever in the
record fairly detracts from its weight.'" Schonewolf v.
Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks
v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th
Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.
474, 488 (1951)).

      The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."
Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing
Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third
Circuit has held that an "ALJ must review all pertinent medical
evidence and explain his conciliations and rejections." Burnett
v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).
Similarly, an ALJ must also consider and weigh all of the non-
medical evidence before him.  Id. (citing Van Horn v. Schweiker,
717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d
700, 707 (3d Cir. 1981).

      The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

              Unless the [Commissioner] has analyzed all
            evidence and has sufficiently explained the

> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial

5

gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix

6

1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.    If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

    This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.  Analysis

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of cervical degenerative disc disease, lumbar degenerative disc disease, right rotator cuff tendinopathy, and hypothyroidism were severe, but that Plaintiff's chronic pain and mental health condition were not severe.  At step three, the ALJ determined that Plaintiff's severe impairment or her severe impairment in combination with her other impairments did not equal the severity of one of the listed impairments.  For step four, the ALJ determined that Plaintiff could not perform her past work as an accounts receivable clerk, but at step five the ALJ found that Plaintiff retained the residual functional capacity to transfer her skills from her past job as an accounts receivable clerk to other jobs, including a credit reference clerk.  Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date of June 10, 2008 through March 31, 2011, the date she was last insured.

Plaintiff presents four areas where she claims the ALJ

8

erred in his analysis:

> 1. The ALJ's refusal to consider medical records he deemed illegible because they were handwritten was a denial of due process of law.

> 2. The ALJ erred at step three by improperly considering Social Security Listing 1.04(A).

> 3. The ALJ erred in his assessment of Plaintiff's RFC.

> 4. The ALJ erred in his step five analysis regarding the transferability of Plaintiff's skills.

**1.   Whether the ALJ's refusal to consider medical records he deemed illegible because they were handwritten was a denial of due process of law.**

At June 5, 2014 hearing, the ALJ refused to consider ten pages of treatment notes by Dr. Leshner at Wedgewood Family Practice, who treated Plaintiff from June 16, 2009 to March 6, 2012, because they were handwritten and illegible.  Plaintiff's counsel and the ALJ engaged in the following discussion about those records:

> ALJ: Oh wait, let me just do something while we're sitting here.  I didn't actually look at those other records.  I want to look at Bl2F and see what that says.  Please, I can't read it, any of it.  No help.  This is not your fault, ma 'am.

> ATTY: Well you can read some of it.

> ALJ: But sometimes and actually it's quite common, regrettably it's quite a common occurrence, we run into a doctor who's handwriting is illegible and that's the same as if it didn't exist unless your attorney could contact the doctor. I guess he retired, and see if he can translate the hieroglyphics.

ATTY: Well I mean, you do see in there frequent mentions of chronic pain.

ALJ: I don't see anything in there and frankly neither do you.

ATTY: Oh, yes I do, page 1.

ALJ: Listen to me. No, no, you're not doing it. I am the sole arbiter of legibility. Your opinion regarding his handwriting is irrelevant and I would exclude it. There's only two people in here that do it. Not in here, me and him.

ATTY: Well –

ALJ: No, that's the rule.

ATTY: Judge, I hear what you're saying.  I'm saying that I can read it. I see what it says.

ALJ: No, you can't.

ATTY: All right.

ALJ: No, you can't. If I allow that it's going to open a can of worms that would explode the system.

ATTY: All right.

ALJ: I'm not allowing you to recite anything from the records and if that makes an appealable ruling of some kind, so be it, because that's the way I do it. That's the fairest way to other people, everybody who have illegible records in their file.

ATTY: All right.

(R. at 52-52.)

Plaintiff argues that the ALJ's "because I said so" refusal to consider these medical records, despite legible references to

"chronic pain" and specific pain medications prescribed to Plaintiff, is a violation of Plaintiff's due process rights. Defendant counters that these records are immaterial because the content of the legible portions are recorded in other treatment notes and considered by the ALJ.

Neither party directs the Court to the Social Security rules or regulations that provide the standards governing an ALJ's assessment of evidence in this type of administrative proceeding.  As an overarching principle, Social Security administrative hearings are subject to the requirements of due process, Lippincott v. Commissioner of Social Sec., 982 F. Supp. 2d 358, 385 (D.N.J. 2013) (citing Richardson v. Perales, 402 U.S. 389, 401–02 (1971)) (other citation omitted), and any hearing afforded a Social Security disability claimant must be full and fair, Meyler v. Commissioner of Social Sec., 238 F. App'x 884, 889 (3d Cir. 2007) (citing Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995)).

As to the procedure by which a Social Security administrative hearing is conducted, "In the course of any hearing, . . . the Commissioner may administer oaths and affirmations, examine witnesses, and receive evidence.  Evidence may be received at any hearing before the Commissioner of Social

11

Security even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1). Even though the burden is upon the claimant to prove her disability, "due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." Hess v. Secretary of Health, Ed. and Welfare, 497 F.2d 837, 840 (3d Cir. 1974). That is not to say that an ALJ "must search out all the relevant evidence which might be available, since that would in effect shift the burden of proof to the government," but "these proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." Id.

The Court finds that Plaintiff's due process rights were not violated when the ALJ refused to consider the mostly illegible treatment notes of Dr. Leshner. Courts faced with similar situations have come to the same conclusion. For example, in Harrison v. Commissioner of Social Sec., 569 F. App'x 874, 878-79 (11th Cir. 2014), the plaintiff argued that the ALJ had a duty to contact one of her treating physicians

12

to obtain further clarification because his treatment notes were scarce and largely illegible. The plaintiff cited 20 C.F.R. § 404.1512(e), which required the ALJ to obtain additional information "[w]hen the evidence ... from [the] treating physician ... is inadequate for us to determine whether [the claimant is] disabled," and also 61 Fed. Reg. 34471-01, 34474 (July 2, 1996) ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). Harrison, 569 F. App'x at 878.

The Eleventh Circuit noted that an ALJ has a basic duty to develop a full and fair record, but "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record," and "[t]he court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Id. (quotations and citations omitted). The court found that the plaintiff's argument missed the mark because she did not show how the ALJ's failure to contact the doctor

13

resulted in an unfair proceeding or clear prejudice.  Id.  The court observed, "The ALJ did not find evidentiary gaps in the record that thwarted its ability to make a conclusive determination regarding Harrison's disability status. . . . . Without any demonstration that the record was inadequate or led to unfairness or clear prejudice, we cannot say that the ALJ committed reversible error by choosing not to contact [the doctor] for additional information."  Id.

Similarly, in Cribbs v. Commissioner of Social Security, 2016 WL 1068480 at *4 (M.D. Fla. 2016), the record contained "a multitude of illegible, handwritten notes," but the court rejected the plaintiff's argument that the ALJ erred by not contacting physicians for clarification of illegible treatment notes.  The court noted that there is no requirement that an ALJ must contact a physician every time the physician's notes are illegible, and found that plaintiff failed to show that the record upon which the ALJ made his disability determination was so inadequate as to constitute a violation of Plaintiff's due process rights.  Cribbs, 2016 WL 1068480, at *4; see also Jones v. Commissioner of Social Security, 2016 WL 4120442, at *3–4 (M.D. Fla. 2016) (affirming the ALJ's rejection of illegible treatment notes because the plaintiff produced no evidence to

14

suggest that the illegible notes would have established a severe disability); Mireles ex rel. S.M.M. v. Commissioner of Social Sec., 2014 WL 4854426, at *5–6 (W.D. Mich. 2014) (rejecting the plaintiff's argument that illegible portions of the administrative hearing transcript could represent significant and relevant testimony of importance to the determination of the merits because plaintiff did not show any prejudice resulting from the portion of the testimony cited in his brief (citing Williams v. Barnhart, 289 F.3d 556, 557–58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record")).

Just like these cases discussed above, Plaintiff in this case has failed to show how she was prejudiced by the ALJ not considering the purportedly legible portions of Dr. Leshner's records. Based on other treating sources, the ALJ recounted in his decision that Plaintiff suffered from chronic pain and was prescribed pain certain medications, items which were also contained in Dr. Leshner's notes. Plaintiff has also failed to show how the unreadable portions of Dr. Leshner's notes would have provided evidence to contradict the volumes of other

15

evidence the ALJ relied upon in making his decision.[1]

Further, Plaintiff's argument appears to hinge on the fact that the legible portions of Dr. Leshner's notes support her claims of disability.  The Court questions whether Plaintiff would take a contrary position if the ALJ considered mostly illegible treatment notes that refuted Plaintiff's disability claims.  Moreover, if the ALJ considered the notes and only relied upon the legible portions, the Court also queries whether Plaintiff could unfairly benefit by the remaining obscurity if the content of the unreadable notes were unfavorable to Plaintiff's position.  At the very least, these ponderings demonstrate that the ALJ did not err when he refused to consider any of Dr. Leshner's treatment notes under the circumstances of this case.

Even though an ALJ should assist a claimant to develop the record, the burden of proving her disability ultimately remains on Plaintiff.  Plaintiff has failed to show that ALJ's rejection

---

[1] The notes are from June 6, 2009 through March 6, 2012, but the time period relevant to Plaintiff's disability benefits claim spans June 10, 2008 through March 31, 2011.  Thus, a year's worth of treatment notes would not be relevant to the ALJ's analysis even if he considered those records.  Additionally, Plaintiff does not contend that the ALJ erred by not contacting Dr. Leshner for clarification because Dr. Leshner is retired and cannot be easily contacted.

16

of Dr. Leshner's records constitutes a violation of due process
or warrants remand.

> **2.    Whether the ALJ erred at step three by improperly
> considering Social Security Listing 1.04(A).**

Plaintiff argues that the ALJ erred when she was not deemed
disabled at step three of the sequential step analysis.
Specifically, Plaintiff contends that she is disabled according
to Listing 1.04(A):

> 1.04 Disorders of the spine (e.g., herniated nucleus
> pulposus, spinal arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease, facet arthritis,
> vertebral fracture), resulting in compromise of a nerve
> root (including the cauda equina) or the spinal cord.
> With: A. Evidence of nerve root compression characterized
> by neuro-anatomic distribution of pain, limitation of
> motion of the spine, motor loss (atrophy with associated
> muscle weakness or muscle weakness) accompanied by sensory
> or reflex loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting and
> supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ found, "The medical record as a whole does not
support a finding that the claimant's back impairment meets the
requirements of 1.04A as the medical record does not reveal a
positive straight leg raise test at both sitting and supine
positions." (R. at 95.)

Plaintiff argues that the ALJ's finding on this issue is
faulty in two ways.  First, Plaintiff contends that the record

evidence shows that Plaintiff had a positive straight leg test. Second, Plaintiff argues that setting aside her lower back impairment, her cervical spine impairment independently meets the Listing, and does not require a showing of a positive straight leg test.

Defendant counters that even though the record contains a positive straight leg test, it is not clear whether the positive result was for the sitting and supine positions, both of which findings are required under the Listing when lower back impairments are involved. Defendant also argues that because Plaintiff suffers from both cervical and lumbar impairments, the positive straight leg test in both positions is a mandatory requirement for the finding of disability at step three under Listing 1.04(A). Defendant further argues that even if Plaintiff's cervical spine was the only involved area of her back, she would still not meet the Listing because she has not pointed to evidence of sensory or reflex loss, which is also a requirement of the Listing. Defendant contends that a review of the evidence that Plaintiff purports to support sensory or reflex loss does not stand for that finding, and it instead states that Plaintiff's sensations were intact and her reflexes were normal and symmetric.

18

In response, Plaintiff argues that Defendant's independent
analysis of her medical records cannot absolve the ALJ's error
because the ALJ did not himself consider Plaintiff's evidence
regarding her cervical spine impairment and determine whether
that evidence supported a finding of disability under the
Listing.

The Court agrees with Plaintiff.  Listing 1.04(A) provides
criteria for finding a disability based on "compromise of a
nerve root (including the cauda equina) or the spinal cord,"
with (1) "[e]vidence of nerve root compression characterized by
neuro-anatomic distribution of pain, limitation of motion of the
spine, motor loss (atrophy with associated muscle weakness or
muscle weakness) accompanied by sensory or reflex loss," or (2)
"if there is involvement of the lower back," "[e]vidence of
nerve root compression characterized by neuro-anatomic
distribution of pain, limitation of motion of the spine, motor
loss (atrophy with associated muscle weakness or muscle
weakness) accompanied by sensory or reflex loss," "and a
positive straight-leg raising test (sitting and supine)."  20
C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).  A claimant may be
deemed disabled under this Listing if she suffers from an
impairment of her nerve root or the spinal cord in the cervical

19

area, lumbar area, or both.  So long as the claimant
demonstrates the required elements, nothing in this Listing
precludes a determination of disability based on one area of
spinal cord, even if another area is also impaired.  In other
words, even though a claimant may suffer from cervical and
lumbar spine impairments, if the cervical spine impairment by
itself meets the elements of the Listing, that claimant may be
deemed disabled.  See, e.g., Bilak v. Colvin, 73 F. Supp. 3d
481, 486 (D.N.J. 2014) (in determining that the defendant's
position was not substantially justified under the Equal Access
to Justice Act, 28 U.S.C. § 2412(d), to warrant the reduction of
attorney's fees awarded to the plaintiff, the court finding that
even though the ALJ properly discussed medical support showing
that Plaintiff did not have "1) the required neuro-anatomic
distribution of pain, 2) limitation of motion in the spine, 3)
motor loss accompanied by sensory or reflex loss, and/or 4)
positive straight leg raising as required to meet the other
criteria of listing 1.04A," "the ALJ was also required to
satisfy step three by 1) explaining the particular requirements
of Listing 1.04(a) and applying them to the lumbar and cervical
spinal impairments separately, and 2) evaluating the combined
effects of both the lumbar and cervical spinal impairments to

20

determine whether they are cumulatively equal to a listed impairment" (citing Burnett v. Comm'r of SSA, 220 F.3d 112, 119-120 (3d Cir. 2000)).

The ALJ erred by seemingly to only consider Plaintiff's cervical spine impairment and lumbar spine impairment as a single impairment.  Putting aside the issue of whether the medical evidence shows a positive straight leg test in both the sitting and supine positions that would support a finding of disability based on Plaintiff's lumbar spine impairment, the ALJ did not provide any analysis as to whether Plaintiff's cervical spine impairment met the Listing by itself.

The record evidence shows that in December 1977 Plaintiff had a cervical spinal fusion involving C3-6 after sustaining one crushed, one broken, and two loosened cervical discs.  (R. at 96.)  Plaintiff has little movement with her neck because it is fused in place, she has no further options for surgery or physical correction, and she can only manage the pain.  (Id.)  In his analysis of Plaintiff's residual functional capacity, the ALJ detailed Plaintiff's medical records for her cervical spine impairment.  (R. at 98-101.)  Because a district court is not empowered to weigh the evidence or substitute its conclusions for those of the fact-finder, Williams v. Sullivan, 970 F.2d

21

1178, 1182 (3d Cir. 1992), whether these records support or refute a finding of disability under Listing 1.04(A) is not a task this Court may undertake.  This is particularly important here, where the ALJ concluded that Plaintiff's cervical degenerative disc disease to be Plaintiff's "most significant severe impairment" (R. at 105), and she was unable to perform her sedentary-level past work as an accounts receivable clerk (R. at 107).

The Third Circuit has repeatedly stated that an ALJ must set forth the reasons for his decision, and an ALJ's bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient.  Jones v. Barnhart, 364 F.3d 501, 504 (3d Cir. 2004) (citing Burnett, 220 F.3d at 119-20)).  The ALJ in this case failed in that regard.  It is for the ALJ to articulate why Plaintiff meets or does not meet the criteria of Listing 1.04(A), and therefore, the matter must be remanded for further consideration so that the ALJ can do so.[2]  See, e.g., Tursky v. Colvin, 2015 WL

---

[2] As noted above, Plaintiff argues that the ALJ also erred in his assessment of Plaintiff's RFC, and his conclusion that Plaintiff was capable of performing a credit reference clerk position because she possessed transferrable skills from her past work as an accounts receivable clerk.  Because a finding of disability at step three would render moot steps four and five, the Court refrains from issuing a decision on Plaintiff's arguments

22

4064707, at *18–19 (D.N.J. 2015) (reversing and remanding the ALJ's decision because beyond one conclusory statement finding that the plaintiff's impairments did not meet or equal listing 1.04, the ALJ failed to explain or discuss the requirements in listing 1.04).

## III. Conclusion

For the reasons expressed above, the ALJ's determination at step three that Plaintiff was not totally disabled is not supported by substantial evidence.  The decision of the ALJ is reversed and remanded for further proceedings consistent with this Opinion.

An accompanying Order will be issued.


Date: March 2, 2017              s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.


---

relating to those steps, other than to note that the decision is silent as to what skills Plaintiff possessed in her past job that were transferrable to the new job, and whether those skills were not precluded by Plaintiff's RFC limitations.  See, e.g., Podedworny v. Harris, 745 F.2d 210, 220 (3d Cir. 1984) (noting the difference between "aptitudes" and "skills," and that "regulations do not permit benefits to be denied based on the transfer of skills to unskilled jobs").